[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 15, 2007
THOMAS K. KAHN
CLERK

No. 06-14417
Non-Argument Calendar

_____

D. C. Docket No. 05-00431-CV-KD-B

BARON K. JACKSON,
MICHELLE L. JACKSON,

Plaintiffs-Appellants,

versus

CON-WAY TRANSPORTATION SERVICES, INC.,
a.k.a. Con-Way Southern Express,

Defendant,

FIKES TRUCK LINE, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(March 15, 2007)

Before TJOFLAT, BIRCH  and HULL, Circuit Judges.

PER CURIAM:

Baron Jackson and Michelle Jackson appeal the district court's order denying their motion for reconsideration under Federal Rule of Civil Procedure 60(b), in which they challenge the denial of their motion to reinstate their underlying diversity action. We AFFIRM.

## I. BACKGROUND

The Jacksons filed a complaint against defendant Con-Way Southern Express and defendant-appellee Fikes Truck Line, Inc. for injuries suffered in an vehicular collision. They alleged that their automobile was involved in a collision caused by the defendants' negligent operation of two tractor trailers. The Jacksons sought compensatory and punitive damages. Both named defendants filed a notice of removal to federal court which removed this case to the Southern District of Alabama based on diversity under 28 U.S.C. § 1332.

Subsequently, the Jacksons settled their case with Con-Way Transportation Services, Inc., and the district judge dismissed the complaint against Con-Way with prejudice. The remaining defendant, Fikes, filed a notice of settlement to notify the court that a confidential settlement agreement had been negotiated. The district judge entered an order dismissing the case with prejudice, but the order also provided for "the right of any party to reinstate the action within thirty (30) days

2

of the date of this order should the settlement agreement not be consummated." Doc. 24 at 2. Within the thirty days, the Jacksons' attorney and the attorney for Fikes filed a Joint Stipulation for Dismissal for the dismissal with prejudice of all claims against Fikes.

The Jacksons, proceeding pro se, filed a motion for reinstatement and sought to reinstate their case against Fikes because the Jacksons rejected the settlement offer and did not consummate a settlement. Fikes filed an objection and argued that the Jacksons executed a general release and settlement agreement that provided for the release of "all claims arising out of the [collision at issue]." Doc. 27, Ex. A at 1(General Release and Confidential Settlement Agreement, May 30, 2006). Additionally, the release provided that the Jacksons "acknowledge that they have read and understand this Release and Confidential Settlement Agreement and execute it freely with the express knowledge and consent of counsel for the undersigned." Id. at 3.

Fikes further argued that the Jacksons endorsed the settlement check, which read, "IN FULL PAYMENT OF ANY AND ALL CLAIMS." Doc. 27 at 2. The settlement check was attached to a piece of paper that read, "WHEN YOU SIGN (ENDORSE) THE ATTACHED SETTLEMENT CHECK, YOU HAVE ACCEPTED PAYMENT IN FULL FOR ANY AND ALL CLAIMS.

3

ACCEPTANCE OF THIS PAYMENT SHALL OPERATE AS A RELEASE OF ALL LIABILITY FOR ALL DAMAGES ARISING OUT OF THE ACCIDENT OF 06/30/03." Id.

The Jacksons' former attorney filed a response to the plaintiffs' motion to reinstate their case, wherein he states that, on May 4, 2006, the Jacksons had authorized him to settle their claims against Fikes for $25,000, that he had received a settlement check for $25,000 on May 22, 2006, and that he had deposited the check into his trust account that day. Filed with the response was a copy of the $25,000 settlement check. On May 30, 2006, the Jacksons signed the settlement agreement and received a check from their attorney's trust account for their proceeds of the settlement. The Jacksons' former attorney also filed the signed copy of the settlement statement, a copy of the check issued from his trust account with his response, a letter to the Jacksons regarding the disbursement of the settlement proceeds, a disbursement summary sheet signed by the Jacksons that itemized the disbursement of the proceeds, and a copy of a letter sent to the Jacksons in which their former attorney verified the amount of the medical lien.

The settlement agreement provided that, in exchange for $25,000, the Jacksons agreed to release Fikes and Fikes's insurer from claims arising out of the underlying collision. The settlement agreement also states, "the settlement amount

4

shall be kept confidential and shall not be disclosed, made public, disseminated, released, or otherwise referenced, alluded to, or suggested to any person in any manner whatsoever." Doc. 27, Ex. A at 2. Additionally, the settlement agreement prohibited the disclosure "of the settlement or the demands and offers involved in negotiations and discussions leading up to this settlement." Id. The settlement agreement further prohibited any "statement or implication that the settlement is greater or lesser than any specified amount, or any other direct or indirect quantification of the settlement amount." Id.

The Jacksons' former attorney stated that he was notified of two contracts that the Jacksons had signed on July 8, 2003, with a healthcare provider, which created a lien in the amount of $5,585.09 against any settlement proceeds. He submitted copies of these contracts with his response. In addition to creating a lien, the contracts state, "I, further authorize my attorney . . . to disclose . . . the settlement status and amount of any settlement, if requested by [the healthcare provider] for any reason." Doc. 28, Doctor's Lien Exs. The contract also provided that, at the time of settlement, the balance due would be paid in full, but that payment was not contingent on settlement. The Jacksons' attorney informed them that he would have to use the settlement proceeds to pay the amount owed their healthcare provider. The morning after executing the settlement documents,

5

Michelle Jackson returned the trust account check to her attorney's office and informed an employee at the office that they no longer wished to settle.

The district judge denied the Jacksons' motion to reinstate their case. The judge explained that the Jacksons, pro se, stated that they had rejected and not consummated the settlement. Their counsel and Fikes, however, submitted copies of the settlement agreement, executed by the Jacksons, and evidence that the Jacksons had accepted a check from Fikes for settlement of their claims.

Eleven business days later, on July 11, 2006, the Jacksons moved for reconsideration of the order denying their pro se motion for reinstatement. They did not dispute that their attorney had received the settlement check and deposited it into his trust account, nor did they dispute that they had signed the settlement agreement. Instead, they argued that they did not instruct their attorney to mail the executed settlement documents, that they did not authorize their attorney to submit the notice of settlement, and that they did not authorize their attorney to enter into a settlement on their behalf or to accept the settlement check. Essentially, the Jacksons argued that fraud and misrepresentation on part of their attorney to the court made the settlement agreement void.

The Jacksons further contended that they had repudiated the settlement agreement. The settlement agreement provided that the settlement would remain

confidential, and that confidentiality was a material part of the settlement agreement. The contracts that the Jacksons had signed with their healthcare provider authorized the Jacksons' attorney to disclose the amount of settlement to the healthcare provider. By entering into the contract with their healthcare provider, the Jacksons argued that they had refused to keep the settlement confidential and had repudiated the settlement agreement.

The district judge denied the motion to reconsider. She reasoned that, even though the Jacksons had argued that they did not authorize their attorney to submit the notice of settlement and did not authorize him to mail the executed settlement documents, they did execute the settlement agreement and other documents related to the settlement, and they had accepted a check drawn on their attorney's trust account. Based on these acts, the judge rejected the Jacksons' argument that they did not realize they were consummating the settlement.

## II. DISCUSSION

The Jacksons argue that the district judge erred by enforcing a settlement agreement that was obtained through fraud, accident, or mistake. They also contend that the settlement agreement was not valid because there was a dispute over material terms of the agreement; they did not intend to execute the settlement agreement; the settlement agreement conflicted with their respective contracts with

7

their healthcare provider; and the district judge had ordered the breach of the confidentiality provisions of the settlement agreement.  The Jacksons further argue that the district judge erred by failing to hold an evidentiary hearing concerning the settlement agreement.

The Jacksons did not specify whether their motion for reconsideration was filed pursuant to Federal Rule of Civil Procedure 59(e) or 60(b).  Because their motion was filed eleven business days after the district judge entered her order, it is treated as if it were filed pursuant to Rule 60(b).  Mahone v. Ray, 326 F.3d 1176, 1177-78 n.1 (11th Cir. 2003).  We review a district judge's denial of relief under Rule 60(b) for abuse of discretion.  Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003).  Under an abuse-of-discretion analysis, "'we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard.'"  Amlong & Amlong, P.A. v. Denny's, Inc., 457 F.3d 1180, 1188 (11th Cir. 2006) (citation omitted).  Additionally, an appeal from a Rule 60(b) motion is limited to the denial of that motion and does not bring up the underlying judgment for review.  American Bankers Ins. Co. of Fla. v. Northwestern Nat'l Ins. Co., 198 F.3d 1332, 1338 (11th Cir. 1999).

Rule 60(b) provides:

> [T]he court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial . . .; (3) fraud . . . , misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . .; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b). Under Rule 60(b)(3), the movant "must prove by clear and convincing evidence" that the judgment was obtained by "fraud, misrepresentations, or other misconduct" by an adverse party, and must show that the conduct prevented the full presentation of the movant's case. Waddell, 329 F.3d at 1309.

Alabama courts have found consent to a settlement agreement where there is evidence that a party is informed of the terms of the settlement agreement and agrees to it. See Sayre v. Dickerson, 179 So.2d 57, 66-67 (Ala. 1965) (finding consent to a settlement agreement where a party's testimony in open court provided evidence that settlement agreement was agreed upon, even though consent was later withdrawn and characterized as made under protest). Under Alabama law, repudiation of a contract requires "'words or acts evincing an intention to refuse performance within the future time allowed by the contract.'" Coaker v. Washington County Bd. of Educ., 646 So.2d 38, 41 (Ala. Civ. App. 1993) (citation omitted). A settlement agreement, however, may not be repudiated

9

and will be enforced by the courts.  Id. at 41-42.  "A settlement agreement will be reopened only for accident, mistake, or fraud."  Id. at 42.  If a settlement agreement was obtained by fraud, then the entire agreement may be set aside.  Id.

"'The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation.'"  Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1160 (Ala. 2003) (citation omitted).  Under Alabama law, even an "innocent misrepresentation" can constitute fraud if it "concerns an existing material fact upon which the plaintiff relied" that proximately resulted in damage.  Coaker, 646  So.2d at 42.

The settlement agreement and contracts with the Jacksons' healthcare provider were before the district court.  The contracts with the Jacksons' healthcare provider created a lien against any settlement proceeds that the Jacksons received and authorized the Jacksons' attorney to disclose the settlement status and amount of settlement if requested by either a doctor or the clinic that treated the Jacksons.  These contracts were executed by the Jacksons on July 8, 2003.  It is undisputed that the Jacksons executed the settlement agreement with Fikes on May 30, 2006.  The settlement agreement provided that the amount of the settlement be confidential.

10

There is no evidence that the confidentiality provision was breached or would be breached by either the Jacksons or their attorney. The medical liens authorize the Jacksons' attorney to communicate the settlement amount, if requested by the healthcare provider. The Jacksons' attorney admits that he verified the amount of the lien, but there is no evidence that he was asked to disclose the settlement amount or that he did disclose the settlement amount. Additionally, the district judge did not order disclosure of the settlement amount.

The Jacksons presented no evidence that the settlement agreement was obtained through fraud or misconduct by any of the parties. They have shown no false representation. The Jacksons rely on a provision in the contracts that they executed with their healthcare provider that has the potential to conflict with the confidentiality requirements of their settlement agreement. The district judge did not abuse her discretion in denying the Jacksons' motion for reconsideration because they provided no evidence that the settlement agreement was procured through fraud, misrepresentation, or misconduct by any party.

The Jacksons also have challenged the validity of the settlement agreement. They argue on appeal that they did not intend to enter into the settlement agreement because they had previously signed a contract that conflicted with it. Not only did the Jacksons, with the assistance of their counsel, review the

11

settlement agreement before they executed it, but also the settlement check was endorsed, and it was deposited into their attorney's trust account.[1]

Under Alabama law, a settlement agreement may not be repudiated. Coaker, 646 So.2d at 41. Where there is evidence that a party is informed of the terms of the settlement agreement and agrees to it, a court will find consent to the settlement agreement. See Sayre, 179 So.2d at 66-67. The Jacksons do not dispute that they executed the settlement agreement. The settlement agreement reads in part, "The undersigned . . . hereby acknowledge that they have read and understand this Release and Confidential Settlement Agreement and execute it freely with the express knowledge and consent of counsel for the undersigned." Doc. 27, Ex. A at 3. The Jacksons also signed a Disbursement Summary Sheet itemizing the disbursement of the settlement proceeds, and they accepted a check drawn on their attorney's trust account for those proceeds.

The Jacksons did not support their motion for reinstatement with any evidence and argued only that they had rejected the settlement offer and did not consummate the settlement. In their motion for reconsideration, the Jacksons argued that they did not consummate the settlement agreement because they did not authorize their attorney to mail the signed settlement documents or file a notice

_____

[1] The Jacksons' attorney endorsed the settlement check with their permission.

12

of settlement with the court. The district judge did not abuse her discretion in denying the Jacksons' motion for reconsideration because the evidence supports the conclusion that the Jacksons consummated the settlement agreement.

To the extent that the Jacksons argue that the district judge erred by enforcing the settlement agreement that conflicted with the contracts with their healthcare provider, and that the district judge ordered the breach of the settlement agreement, we disagree. The settlement agreement and the contracts with their healthcare provider do not conflict, and there is no evidence that any party breached the settlement agreement. The Jacksons presented no evidence that their attorney disclosed the settlement amount, and the contracts that the Jacksons signed with their healthcare provider obligated their former attorney to disclose any settlement amount if requested. The record shows only that their attorney verified the amount of the lien. The Jacksons also fail to show anything in the record to support their conclusion that the district judge ordered the breach of the settlement agreement. The district judge did not abuse her discretion in denying the Jacksons' motion for reconsideration on the basis that the settlement agreement conflicted with the contracts with their healthcare provider.

The Jacksons also argue that "there was a substantial factual dispute as to the terms of the settlement." Appellant's Br. at 1. They fail to state or show any terms

13

in the settlement agreement over which there was a dispute as to the meaning. The Jacksons reviewed with their attorney the settlement agreement, which states the settlement amount, and they signed it. Accordingly, their argument as to the terms of the settlement agreement is without merit.

Finally, the Jacksons argue for the first time on appeal that the district judge erred by failing to hold an evidentiary hearing on the settlement agreement. There is no indication in the record that the Jacksons ever requested an evidentiary hearing in the district court. Generally, we will not consider an issue unless it was raised in the district court, and the alleged failure to hold an evidentiary hearing on the settlement agreement does not fall within one of the exceptions to that rule. Narey v. Dean, 32 F.3d 1521, 1526 (11th Cir. 1994). Therefore, we will not address the district judge's failure to hold an evidentiary hearing.

### III. CONCLUSION

The Jacksons have appealed the district judge's order denying their motion for reconsideration under Rule 60(b) to reinstate their underlying diversity action. As we have explained, they have provided no evidence of fraud, misrepresentation, or other misconduct by any party, nor did they provide any evidence under any other permissible reason for relief pursuant to Rule 60(b) that would require reconsideration of the district judge's order. Because the district judge did not

14

abuse her discretion in denying the Jacksons' motion for reconsideration, we

**AFFIRM.**