[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12060

Non-Argument Calendar

_____

HELLER BROS. PACKING CORP.,

Plaintiff-Appellant,

*versus*

ILLINOIS UNION INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:18-cv-01668-WWB-DCI

_____

Before GRANT, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Heller Bros. Packing Corp. ("Heller") filed suit against its insurer, Illinois Union Insurance Company ("Illinois Union"), alleging that Illinois Union had improperly denied Heller insurance coverage for pollution-related violations and fines that Florida's Department of Environmental Protection ("FDEP") had levied against the company. The district court held a bench trial and ruled that Heller's insurance policy with Illinois Union covered the disputed insurance claims. However, the district court dismissed the remainder of Heller's suit without prejudice and closed the case, concluding that "the extent of the damages" that Heller had suffered was "unknown and not yet ripe for adjudication." Heller appeals, arguing that the issue of damages is ripe for the district court's consideration. After careful review, we vacate the district court's decision and remand the case for further proceedings.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In October 2018, Heller filed this suit.[1] In its amended complaint, Heller alleged that it had purchased—and was a named insured for—several claims-made pollution liability insurance policies that Illinois Union issued. Specifically, Illinois Union had issued one policy that was in effect from April 1, 2016, to April 1, 2017 (the "2016-17 Policy"), and one that was in effect from April 1, 2017, to April 1, 2018 (the "2017-18 Policy"). Each policy had a

---

[1] We include a brief factual background because we write only for the parties.

limit of $1,000,000 liability per pollution condition and a $3,000,000 pollution condition aggregate limit.

Heller had received notice in January 2017 from FDEP that its property was a likely source for "a chlorinated solvent and benzene groundwater contamination plume" discovered in the area. After Heller informed Illinois Union of the FDEP's notice, Illinois Union denied the claim. FDEP later informed Heller that it was potentially responsible for the contamination and that it planned to initiate formal enforcement proceedings. The agency also notified Heller that it needed to investigate the contamination and begin remedial actions. Heller again submitted this information to Illinois Union which again denied its claim. Heller admitted that the cost of the "assessment and clean-up" of the property was "unknown" at the time it filed suit. Still, it alleged that it had "already incurred assessment costs in excess of $100,000" as well as attorney's fees and "natural resource damage" due to the contamination.

Heller's amended complaint sought several forms of relief. First, it sought a declaratory judgment stating, among other things, that: (i) its claims were covered by the 2016-17 Policy; (ii) Illinois Union must indemnify it "and pay for all claims, remediation costs, natural resource damage and legal defense expense as defined by the policies"; (iii) Illinois Union had a duty to defend it; and (iv) Illinois Union had wrongly denied its claim. Second, and alternatively, Heller sought similar declaratory relief under the 2017-18 Policy. Third, Heller alleged that Illinois Union had breached the

parties' contract (the 2016-17 Policy), causing it to "suffer[] damages that were the direct and proximate result of the Insurer's material breaches" in the past.  Heller also alleged that it would "continue to suffer damages in the future until [Illinois Union's] breaches are cured."  Fourth, Heller alleged that Illinois Union had breached the parties' 2017-18 contract (the 2017-18 Policy), causing it to suffer damage in the past that it would continue to suffer until Illinois Union cured its breach.  In sum, Heller's four counts sought declaratory relief, damages, prejudgment interest, and attorney's fees and costs, along with any other relief the court found appropriate.

In 2019, the district court granted the parties' joint motion to bifurcate the issue of coverage and the issue of damages.  The court also stayed discovery on damages until the resolution of the coverage issue.  The case ultimately proceeded to a bench trial on several issues, including whether Heller's damages were covered by the 2016-17 Policy.  At the close of trial, the district court ruled that Illinois Union had breached the 2016-2017 policy by declining Heller's requests for coverage, and that Illinois Union had not shown that the claims were excluded.

The court ordered the parties to submit a joint status report regarding damages and proposed discovery deadlines for addressing the damages issue.  However, the parties could not agree on discovery deadlines because Illinois Union did not believe a trial on damages was appropriate at that stage of the litigation.  Illinois Union emphasized that FDEP had not yet determined whether Heller

would be subject to costs for clean-up or remediation and, therefore, discovery on damages would be "premature and not ripe." Heller contended that a trial on damages indeed was warranted because it had already incurred significant damages and future damages "up to the policy limits [we]re reasonably certain to be incurred . . . ."

The district court ordered Heller to show cause why the case should proceed to the damages stage because, after reviewing the record, it was "not clear as to why [Heller] should not simply be ordered to resubmit its claims for the costs [it] has incurred related to the contamination to date, as opposed to proceeding to trial on that issue." As for future damages, the court reasoned, "the FDEP is still conducting its investigation" so "it appears the extent of the damages is unknown and not yet ripe for adjudication."

Heller responded, arguing the case should proceed to trial on damages because the district court's order had found that Illinois Union was liable but Illinois Union had not paid "a penny towards the significant damages [it] already incurred, nor ha[d] it agreed to pay any future costs up to policy limits, upon submission of" those expenses. Heller contended that it had suffered recoverable damages "in the approximate amount of $407,000" and recoverable attorney's fees "of approximately $188,000." In Heller's view, even if its future damages were not fully predicable, it had already incurred damages for past injuries and a declaratory judgment regarding coverage for future damages would address its anticipated future injuries, given the FDEP's ongoing investigation.

In May 2023, the district court ruled in Illinois Union's favor, finding that the extent of Heller's damages was unknown and not yet ripe for adjudication. Accordingly, the district court dismissed Heller's claims for damages without prejudice and directed the Clerk of Court to close the case. The district court did not enter a declaratory judgment on any of Heller's claims nor did it otherwise memorialize its ruling on liability in any judgment. Heller timely appealed.

## II. STANDARD OF REVIEW

"The doctrines of standing and ripeness 'originate' from the same Article III limitation." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)). We review standing and ripeness determinations *de novo*. *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1378 (11th Cir. 2019).

## III. DISCUSSION

"Ripeness is peculiarly a question of timing." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (alteration adopted) (quoting *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974)). "Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Id.* (alteration adopted) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).

23-12060            Opinion of the Court                    7

Heller makes several arguments about ripeness in its initial brief, but we need not address all of them.[2]  We agree with Heller that the district court erred in determining that Heller's claims for past damages were not ripe.  And regarding future damages, we also agree that the district court's order did not adequately explain the basis for its decision.  *See Clay v. Equifax, Inc.*, 762 F.2d 952, 957-58 (11th Cir. 1985) (collecting cases); *In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003).  Accordingly, we vacate and remand.

First, and importantly, the district court's order fails to dis-aggregate the portions of Heller's suit which were indisputably ripe—and fully resolved in the liability-stage bench trial—from those which the court determined were not ripe for adjudication.  *See, e.g.*, *I.L. v. Alabama*, 739 F.3d 1273, 1279 (11th Cir. 2014) (standing context) ("Because standing cannot be dispensed in gross . . . we address standing for each category of claims sepa-rately." (internal quotations and citations omitted)); *Behr v. Camp-bell*, 8 F.4th 1206, 1213 (11th Cir. 2021) (similar); *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 434 n.27 (5th Cir. 2021) ("We assess ripeness claim by claim.").  In addition to future harms, Heller's suit sought damages for injuries it already suffered, and a dispute over those damages is ripe even if the parties' dispute about future damages is not.  *See Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006) (not-ing the difficulty of determining ripeness in pre-enforcement re-view challenges, rather than in cases where "damages [are] already

---

[2] Illinois Union did not file a response brief.

sustained"); *Baughcum v. Jackson*, 92 F.4th 1024, 1036-37 (11th Cir. 2024) (similar).[3] We conclude that the district court erred when it failed to conduct its ripeness analysis claim by claim, and that at least some of Heller's claims were ripe. *See Clay*, 762 F.2d at 957. We, accordingly, remand this issue to the district court for it to do the requisite analysis in the first instance.

Second, the district court cited two cases in support of its conclusion that the case was not ripe—*Sun Life Assurance Co. of Canada v. Imperial Premium Finance, LLC*, 904 F.3d 1197 (11th Cir. 2018), and *Valley Creek Land & Timber, LLC v. Colonial Pipeline Co.*, 432 F. Supp. 3d 1360 (N.D. Ala. 2020)—but our review of those cases shows that they stand for two different propositions and are distinguishable from the facts of this case. In *Sun Life*, we ruled that certain claims were not sufficiently foreseeable under Florida law, and we affirmed the dismissal of those claims at summary judgment. *See Sun Life*, 904 F.3d at 1222. In other words, *Sun Life* did not address ripeness. *Id.* In *Colonial Pipeline*, which arose under Alabama law, the district court concluded that all of the damages claims in a suit were prudentially unripe because the defendant was still engaged in contractual mitigation efforts. *See Colonial Pipeline*, 432 F. Supp. 3d at 1365-70. The lack of discussion from the district court on these cases makes it difficult to determine why the district

---

[3] In fact, in a joint status report the parties filed before the bench trial on liability, they agreed that Heller had incurred "approximately $197,100" in "[p]ollution assessment costs to date" as well as attorney's fees. While this joint status report noted that future damages were unknown, the parties apparently agreed that some of Heller's damages were ascertainable.

23-12060                Opinion of the Court                9

court saw these two cases as dispositive here. *See, e.g., Mosley v. Ogden Marine, Inc.*, 480 F.2d 1226, 1227 (5th Cir. 1973)[4] (remanding when the "appellate court cannot ascertain which of several theories formed the basis for the entry" of judgment).[5]

Third, the district court's order appears to have conflated the issue of whether the suit is ripe with the issue of whether Heller had established damages sufficient for it to succeed on the merits. The order—in its citation to cases addressing the merits of such a claim—suggests that Heller had not sufficiently *shown* the amount of liability so there was no dispute to adjudicate. This would be inconsistent with our precedent which consistently distinguishes between a court's ability to hear a case and that same case's strength on the merits. *See Moody v. Warden, Holman CF*, 887 F.3d 1281, 1285 (11th Cir. 2018) ("The Supreme Court has cautioned that federal courts 'must not confuse weakness on the merits with absence of Article III standing.'" (quoting *Ariz. St. Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015))); *Club Madonna*, 924 F.3d at 1382 (same); *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017) (explaining that Article III must be satisfied "prior to and independent of the merits of a party's claims" (quoting

---

[4] All Fifth Circuit decisions issued by the close of business on September 30, 1981, are binding precedent in this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

[5] For the same reason, we are also uncertain whether the district court ruled that the case was unripe under Article III or "prudentially unripe." *See Susan B. Anthony List*, 573 U.S. at 167 (addressing prudential ripeness and calling the continuing viability of that doctrine into question).

*Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1349 (11th Cir. 2009))). Typically, a lack of proof is a merits issue, not a justiciability issue. Moreover, because the case was bifurcated into a liability phase and a damages phase, the district court proceedings thus far have related to liability, not to damages. However, the lack of discussion from the district court on this point as well makes it difficult to understand whether the district court concluded that Heller had not yet proven all its damages—even though it was not yet obligated to prove damages. On remand, the district court should further explain the bases for its decision in this respect as well.

## IV. CONCLUSION

For the reasons explained above, we vacate the judgment below and remand the case for further proceedings. We express no position on the merits of Heller's damages claims. Instead, consistent with general practice, we leave those questions to the district court in the first instance. *See MSP Recovery Claims, Series LLC v. Metro Gen. Ins. Co.*, 40 F.4th 1295, 1306 (11th Cir. 2022) ("[W]e generally 'will not consider issues which the district court did not decide.'" (quoting *McKissick v. Busby*, 936 F.2d 520, 522 (11th Cir. 1991))).

**VACATED AND REMANDED.**